### STATE v. ALBERT CHAVIS.

(Filed 10 May, 1967.)

Narcotics § 4;　Criminal Law § 101—　Circumstantial evidence held insufficient to show that defendant had marijuana in his possession.

The evidence tended to show that the officers followed defendant and his companion along a street and through a vacant lot, that defendant was then wearing a hat, that they observed defendant continuously except when a car passed with headlights, that they saw defendant and his companion stand talking for a period of some thirty seconds to a minute, and that they arrested defendant when he came back toward them, searched defendant and found no narcotics on him, but later found a hat with 11 envelopes of marijuana in it in the grass four or five feet from where defendant and his companion had been talking. The officers testified that the hat in which the envelopes containing marijuana were found was the identical hat defendant was wearing when he passed them. There was no evidence that the marijuana was in the hat while defendant was wearing it or that the marijuana was put in the hat at defendant's direction. *Held:* The evidence is insufficient to support a finding that the marijuana found in the hat was in the possession of defendant, and nonsuit should have been entered. G.S. 90-88.

APPEAL by defendant from *Bailey, J.,* November 1966 Regular Criminal Term of CUMBERLAND.

Criminal prosecution on a bill of indictment charging that de-

fendant, on or about April 30, 1966, "did wilfully, unlawfully and feloniously, have in his possession a quantity of narcotic drugs, to wit: Eleven (11) envelopes 2 by 3½, containing 27.01 grams of marijuana," etc., a violation of G.S. 90-88.

The State's evidence, summarized except where quoted, tends to show the following:

On the night of Saturday, April 30, 1966, F. M. Boone, a police officer in uniform and on duty in a different area, answered a call to meet F. L. Truitt, "a plain-clothes man," in the Hillsboro Street area. Boone had known defendant for five or six years and during that period had seen him three or four times a week.

Boone and Truitt met on the west side of Hillsboro Street in front of the Plaza Motel. About 8:15 or 8:30 p.m., defendant, when first observed by Boone and Truitt, was walking north along the sidewalk on the west side of Hillsboro Street. They observed him as he walked in and out of Mabel's Restaurant, and Boone observed him through the window as defendant passed through the restaurant. Upon leaving the restaurant, defendant continued his walk north along the sidewalk and in so doing passed between Boone and Truitt and the building adjacent to the sidewalk. When he passed by the officers, he was so close Boone "could have laid a hand on him." Defendant was wearing "gray trousers, a three-quarter length coat and a gray felt hat."

When defendant got approximately twenty-five feet north of the officers, "another man walked up to him." These two men "took a few steps, then stood there near the front of R and W Motor Company on Hillsboro Street and talked." There is a vacant lot, about sixty feet by one hundred feet, north of the place of business of R and W Motors and between it and Walter Street. Walter Street is a dirt street about twenty feet wide extending west approximately three hundred feet from Hillsboro Street to Bragg Boulevard.

Following their conversation in front of R and W Motors, defendant and his companion "proceeded on across the vacant lot to the end of Walter Street and moved by two houses" located on the south side of Walter Street. The house nearest Hillsboro Street was a frame house; the house to the west of it was a smaller cinder block house.

After defendant and his companion had started walking slowly in a westerly direction across the vacant lot toward Walter Street, and before they had "turned the corner," the officers, walking slowly, proceeded across the vacant lot in the direction taken by defendant and his companion. Defendant and his companion were observed by the officers continuously except for "two or three seconds" when

the headlights of an eastbound car on Walter Street caused the officers "to step back out of the glare of the headlights" to avoid disclosure of their presence. Boone testified: "Detective Truitt and myself crossed the vacant lot to the corner of the first of the two houses and observed the defendant and the other man standing at a point beyond the second house. They remained at that point at the edge of Walter Street approximately 30 seconds to a minute, this point being about 300 feet from Mabel's Restaurant. I then observed Albert Chavis coming back towards Hillsboro Street and he was stopped by Officer Truitt and myself when he reached our position. At this time the defendant had on gray trousers, a black leather three-quarter length coat, and was bareheaded. At that time, we took him into custody, searched him and asked him where was his hat." There was evidence "(t)he other man . . . had no hat on whatsoever; from the first time we saw him he was without a hat."

According to Truitt: "When he came back to where we were, I placed him (Chavis) under arrest, informed him that I was searching him for marijuana. He readily assented, stating that he did not have any. I searched him and I did not find anything on him so I released him. The other subject was Military Personnel." There was evidence this unidentified "other subject," who was in civilian clothes, did not have a valid pass from Fort Bragg and was taken into custody by a Military Policeman. There is no evidence of any further investigation concerning this "other subject."

The court admitted, over defendant's objections, statements attributed to defendant, in response to interrogation by the officers at the time of such arrest and search, to the effect the hat he had been wearing was a borrowed hat, that he had given it back to the fellow to whom it belonged, and that he did not know the name of the fellow to whom he had given it. The officers had no warrant of arrest, no search warrant and did not warn defendant as to his constitutional rights.

Following the arrest, search and interrogation of defendant, Boone began a search for the hat, leaving defendant in the custody of Truitt. Shortly thereafter he was assisted in the search by Truitt and a Military Policeman. Their search included the area on the north side (all vacant) as well as the area on the south side of Walter Street. About 8:50 p.m., Boone found a hat and eleven envelopes, containing a total of 27.01 grams of marijuana. The hat was lying "with the crown of the hat down towards the ground and the bottom of the hat sticking up." Boone testified: "The envelopes were in the crown of the hat. The crown of the hat was on the ground

with the brim up. The envelopes were scattered about in the brim of the hat." Defendant had been released before the hat was found and was not present when it was found.

The hat and the envelopes containing marijuana were found "just beyond those two dwelling houses" on the left side of Walter Street "going towards Bragg Boulevard," approximately four or five feet from where Boone had observed "the defendant and the other subject talking." The grass was approximately knee high and the hat was found "in a little tussle of grass."

There were no street lights (or sidewalks) on Walter Street. There was a street (mercury) light on the east side of Hillsboro Street near Walter Street, in front of R and W Motors. There were lights on Bragg Boulevard in the area of its intersection with Walter Street. The evidence is silent as to lights, if any, at the R and W Motors premises or at either of the two residences on Walter Street.

Each of said officers testified positively the hat on which the envelopes containing marijuana were found was the identical hat defendant was wearing when he passed them on the sidewalk and thereafter proceeded with his bareheaded companion across the vacant lot. There was no evidence either officer had seen defendant wear the hat on any other occasion.

Defendant did not testify. He offered evidence tending to show the hat found by the officers and identified as State's Exhibit No. 1 was not his hat. A witness for defendant testified he was in defendant's car, parked in the vacant lot at the southwest corner of Hillsboro and Walter Streets, and that defendant had left his hat in the car; that he (witness) drove defendant's car away on an errand of his own; and that, upon his return about 9:00 or 9:30 p.m. from such errand, defendant got his hat. Defendant's witnesses identified Defendant's Exhibit No. 1 rather than State's Exhibit No. 1 as defendant's hat.

The evidence was in conflict as to the extent of vehicular and pedestrian travel in the vicinity during the period the officers were following and observing defendant and his companion and thereafter until the hat and envelopes were found.

The jury returned a verdict of guilty as charged. Judgment, imposing a prison sentence of five years, was pronounced.

Defendant excepted and appealed.

*Attorney General Bruton and Staff Attorney White for the State.*
*James R. Nance, Jr., for defendant appellant.*

BOBBITT, J.   G.S. 90-88 provides: "It shall be unlawful for any person to manufacture, *possess*, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this article." (Our italics.) Marijuana (marihuana) is a narcotic drug and so defined in G.S. 90-87(1) and (9). Defendant is charged with the unlawful *possession* thereof.

The State contends envelopes containing marijuana found in an upturned hat in a grassy area between the cinder block dwelling and Bragg Boulevard *had been* in the possession of defendant. Obviously, defendant did not have possession of the hat or envelopes or marijuana at the time of his arrest on Saturday, April 30, 1966.

The State's case rests primarily upon evidence tending to show that the hat in and on which the envelopes containing marijuana were found was the identical hat defendant was wearing when he, walking along the sidewalk, passed in front of Officers Boone and Truitt. Obviously, proof of this evidential fact beyond a reasonable doubt was a prerequisite to the establishment of defendant's guilt.

If the circumstantial evidence in its entirety were deemed sufficient to withstand defendant's motion for judgment as in case of nonsuit, an application of the law to the facts arising on the evidence as provided in G.S. 1-180 would require that the presiding judge instruct the jury that proof of such fact beyond a reasonable doubt was a prerequisite to a verdict of guilty. However, proof of such evidential fact would not, standing alone, warrant a verdict of guilty. To establish defendant was guilty as charged, it was incumbent upon the State to satisfy the jury from the evidence beyond a reasonable doubt that the marijuana in the envelopes found by Officer Boone was in defendant's possession either in the hat he was wearing or elsewhere about his person. With reference to nonsuit, the critical inquiry is whether marijuana found by Officer Boone was in the possession of defendant when he was first observed and followed by the officers.

There is no evidence that either officer observed defendant make any disposition of the hat he had been wearing or of any article or articles he may have had in his possession. Officer Truitt testified: "I did not see the defendant place his hat in any particular place. I just saw him minus his hat."

The identity of the person who had possession of the marijuana prior to the discovery thereof by Officer Boone is not disclosed. Did defendant put the marijuana in the hat found by the officers? Was it put there by defendant's unidentified companion? Was it put there before or after defendant and his companion left the area where the hat was found, walked back towards Hillsboro Street and were ac-

costed by the officers? There was no evidence the marijuana was in a hat while defendant was wearing it. Nor was there evidence the marijuana was put in the hat found by the officers at defendant's direction.

The rule for determining the sufficiency of circumstantial evidence to withstand a motion for judgment as in case of nonsuit as set forth in *S. v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431, and approved in many subsequent decisions, is established law in this jurisdiction. Frequently, the application of the rule presents difficulty. Here, the evidence, in our opinion, falls short of being sufficient to support a finding that the marijuana found by the officers in and on a hat in the high grass was in the possession of defendant when he was first observed and followed by the officers. Although the evidence raises a strong suspicion as to defendant's guilt, we are constrained to hold the motion for judgment as in case of nonsuit should have been allowed. Accordingly, the judgment of the court below is reversed.

The foregoing disposition renders unnecessary discussion of assignments of error relating to (1) the competency of the testimony as to statements made by defendant when arrested, searched and interrogated, and (2) the sufficiency of the court's instructions with reference to the application of the law to the facts arising on the evidence.

Reversed.