STATE v. KELLY CLYBURN, BOBBY McVAY AND HENRY FRYER.

(Filed 20 March 1968)

**1. Criminal Law § 75—**

The test of admissibility of a defendant's confession is whether the statement was in fact voluntarily made.

**2. Criminal Law § 76—**

Whether an alleged confession was made voluntarily so as to be admissible in evidence is a question to be determined by the trial court in the absence of the jury.

**3. Same—**

Whether the defendant made a purported confession is a question of fact to be determined by the jury from evidence admitted in its presence.

**4. Same—**

Where the trial court finds upon the *voir dire* from conflicting evidence that the confession was voluntarily and freely made after defendant had been advised of his rights, the findings, being supported by conclusive evidence, are binding on appeal.

**5. Criminal Law § 106—**

The extra-judicial confession of guilt by a defendant must be supported by evidence *aliunde* which establishes the *corpus delecti,* and such evidence may be direct or circumstantial.

**6. Burglary and Unlawful Breakings § 5;   Larceny § 7—**

Testimony of a store manager that a quantity of guns and other merchandise was stolen from the locked premises after business hours is sufficient to establish the *corpus delecti,* and such evidence, together with defendant's confession that he participated in the breaking and the larceny, *is held* sufficient to be submitted to the jury.

**7. Criminal Law § 103—**

It is for the court to determine the competency, admissibility and sufficiency of the evidence, and it is for the jury to determine the weight, effect and credibility of the evidence.

**8. Criminal Law §§ 66, 106—**

The evidence of the State sufficiently established the *corpus delecti,* but the sole evidence as to the identity of the defendant was testimony by a witness who could not "honestly say" that defendant was an accomplice. *Held:* The evidence raises no more than a suspicion or conjecture as to defendant's identity, and the offense charged was incorrectly submitted to the jury.

APPEAL by defendants Henry Fryer and Bobby McVay from *Clarkson, J.,* 26 June 1967 Regular Criminal Session of MECKLENBURG.

Defendants were charged in one bill of indictment with felonious breaking and entering and felonious larceny. Defendants filed separate cases on appeal. Both cases are before the Court on *certiorari.*

The State's evidence in substance tends to show:

O. K. Tesh testified: He was branch manager for Brown-Rogers-Dixson Company, a corporation, on 14 March 1967. The company building was located at 209 E. Seventh Street, Charlotte. He locked the building about 5:30 p.m. on 13 March 1967, and when he returned to work on the morning of 14 March he saw that the cash drawer had been pried open and the cash register drawer was open. After police arrived, he accompanied them to the second floor and found that the gun "cage" had been broken into and 42 guns and a quantity of electric razors and watches had been removed. A window on the second floor which he had checked on the previous night was open. Further investigation revealed that four televisions, three radios and four phonographs were missing. He estimated the fair market value of the property taken to be about $5,000.00. He had not given defendants permission to enter the building or to take anything therefrom. No other company official had authority to grant such permission. None of the property had been recovered by the company.

After conducting a *voir dire* hearing at which Officers H. M. White and Thomas R. Smith and defendant Clyburn testified, the court found that statements made by Clyburn to Officers White and Smith were freely and voluntarily made and were competent against Clyburn.

The trial judge heard Officer White and defendant Henry Fryer in the absence of the jury as to statement Fryer reportedly made to Officer White. The court ruled the alleged statement to be incompetent as to all defendants.

Continuing the *voir dire* hearing in the absence of the jury, Officer White testified that he talked to Bobby McVay on 21 April 1967. Before questioning McVay he advised him "that he had the right to remain silent and not answer any questions; that anything he told me could be used for him or against him in a court of ·law; that he had. the right to have a lawyer present while I talked to him; and that if he could not afford a lawyer, the court would appoint one for him. McVay's constitutional rights were explained to him, but he did not sign a waiver. . . . After advising Clyburn of his constitutional rights, he said nothing about wanting a lawyer. There were no physical threats made against the defendant nor any promises made to him. . . . Our discussion took place on April 21 at about 4:30 a.m. McVay said he didn't want to sign a waiver but he would talk to me. . . . I told McVay that he was charged with storebreaking and larceny at Brown-Rogers-Dixson Co. on East 7th Street. After that I read the warrant to him. . . . I asked McVay what part he took in this break-in and he told me that he climbed up on the roof; that he did not enter into the· building and that Truesdale and Clyburn handed the merchandise ʼout the window to him.· . . ."

Bobby McVay on the same *voir dire* stated:

"I was taken to the police department on Thursday night the 18th. Mr. White was the first officer to talk with me early the next morning. He advised me of my constitutional rights which I understood, then I told him that I didn't have anything to talk to him about. Officer White then raised a number of questions with me. Throughout all the questioning I indicated that I did not desire to discuss the matter with him, and it was only at his insistent questioning that I ever said anything at all.

"Detective White told me that Kelly Clyburn and Henry Fryer had already signed a statement against James Truesdale and myself. He asked me why I didn't sign a statement. Said he thought that if I would sign a statement that maybe they

would revoke my probation, or wouldn't put me on such high bond.

CROSS EXAMINATION:

"At the time Mr. White talked to me he advised me of my constitutional rights; and I understood what he was talking about.

I told him I didn't want to talk to him about the case; but he asked me question after question. However, I did not tell him anything. I answered the questions he asked me and the next morning he came to me and asked me did I want him to write a statement or did I have anything to tell him. I told him no.

At that time I did not ask him for a lawyer. Officer White did not harm me in any way. He never promised me anything except that he would have my bond lowered."

"THE COURT: Court finds as a fact that the defendant McVay was warned of his constitutional rights after he had been arrested and the warrant was read to him; finds as a fact that he fully understood what his constitutional rights were; that he did not request a lawyer; that he freely and voluntarily without any inducement or promise or threats of physical violence of any kind, made a statement to the police officers as set forth in the record; that while he refused to sign a waiver or sign a written statement, the court holds that the oral statement made to the officers is competent as against the defendant McVay but not as to his co-defendants and it can be admitted into evidence before the jury as to the defendant McVay."

The jury returned to the courtroom and Officer White testified as to statement made by defendant Kelly Clyburn. Before he testified, the court instructed the jury that the statement was admitted only as against Clyburn. The statement implicated James Truesdale, Bobby McVay, Henry Fryer and Kelly Clyburn in the breaking, entering and larceny.

H. M. White testified in presence of jury, over objection, that Bobby McVay on 21 April 1967 stated to him that he (McVay) climbed up on the roof of the Brown-Rogers-Dixson building and took merchandise out of the window from Truesdale and Clyburn. He had been drinking and had some pills and he remembered going to Clyburn's house later, but did not remember all that happened.

At this point the court instructed the jury not to consider the testimony relative to McVay's statement as to defendants Fryer and Clyburn.

John Cureton then testified that at about 9:00 a.m. on or about 14 March 1967 he had a conversation with Kelly Clyburn concerning the disposition of a lot of guns which had come from a hardware company on 7th Street. He told Clyburn that he could not handle the guns, but he knew someone who might be interested. He saw Clyburn about noon of the same day with "two other gentlemen in the courtroom now that look like the men that were with Kelly on the morning of the 14th. . . .. I believe these fellows in the courtroom were the ones with Clyburn on the morning of the 14th (pointing to these men). But there is some doubt in my mind at this point, because these men now look different in their appearance. . . . I see in the courtroom two men who were in the car with me at the time we were riding over to where the guns were. . . . When we got to this place on Myers Street, we got out of the car. We were Clyburn, Buck, myself and the other three fellows that were in the car. We went upstairs in this building and into a room. In the middle of the floor was a pile of guns in boxes stacked up. . . . The other three fellows were left standing outside the door on the steps, but the door was open. . . . Kelly Clyburn in my presence and in the presence of the other two defendants said nothing about the participation of the other two defendants in this case with him in this breaking and entering. . . . As far as I remember Fryer and McVay are the two men, I believe. . . . One of the men was short and the other one was tall and I remember that part. One walked — he had a sort of drag to him when he walked. I noticed that, but as far as looking at these two men here and remember the way the other two looked, it just can't be clarified in my mind to that point. . . . It is just hard to say just for sure this is what I saw three months ago. I can't honestly say that they are the two men, but I believe they were. There is some doubt in my mind about it, but I believe they are the two men."

Defendants offered no evidence and moved for judgments of nonsuit. The motions were denied.

The jury returned verdicts of guilty as charged in the bill of indictments against all defendants. From judgment entered on the verdicts, defendants Bobby McVay and Henry Fryer appealed.

*Attorney General Bruton and Deputy Attorney General McGalliard for the State.*

*William J. Richards, Jr., for defendant McVay.*

*T. O. Stennett for defendant Fryer.*

BRANCH, J.

### APPEAL OF DEFENDANT McVAY.

Defendant McVay assigns as error the admission into evidence of his confession.

The test of admissibility of a defendant's confession is whether the statement was in fact made voluntarily. *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572; *State v. Gosnell,* 208 N.C. 401, 181 S.E. 323. Whether the statement was made voluntarily so as to be admissible before the jury is a question to be determined by the trial judge upon evidence presented to him in absence of the jury. *State v. Outing,* 255 N.C. 468, 121 S.E. 2d 847. It is a question of fact, to be determined by the jury from evidence admitted in its presence, whether such statement was made by the defendant. *State v. Guffey,* 261 N.C. 322, 134 S.E. 2d 619. However, the conclusions of law drawn from the facts found are not binding on the appellate courts. *State v. Hines,* 266 N.C. 1, 145 S.E. 2d 363.

The procedure to be followed when objection is interposed as to the voluntariness of a confession is set forth in the case of *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1, where Lake, J., speaking for the Court, stated:

> "When the State proposes to offer in evidence the defendant's confession or admission, and the defendant objects, the proper procedure is for the trial judge to excuse the jury and, in its absence, hear the evidence, both that of the State and that of the defendant, upon the question of the voluntariness of the statement. In the light of such evidence and of his observation of the demeanor of the witnesses, the judge must resolve the question of whether the defendant, if he made the statement, made it voluntarily and with understanding. *State v. Barnes, supra; State v. Outing, supra; State v. Rogers, supra.* The trial judge should make findings of fact with reference to this question and incorporate those findings in the record. Such findings of fact, so made by the trial judge, are conclusive if they are supported by competent evidence in the record. No reviewing court may properly set aside or modify those findings if so supported by competent evidence in the record. *State v. Barnes, supra; State v. Chamberlain, supra; State v. Outing, supra; State v. Rogers, supra.*"

Defendant contends that if he made a statement, it was involuntary since he was insistently questioned after he indicated to the officers that he did not desire to talk about the case. To support this contention, defendant relies on that part of the opinion in *Miranda v. Arizona,* 384 U.S. 436, which states:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the conduct of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked."

The record is in sharp conflict as to this contention. Defendant offers evidence that he was questioned insistently after indicating that he did not wish to talk. The State offered evidence that defendant freely talked upon first being questioned, and only indicated that he did not wish to sign a waiver.

In the case of *State v. Logner*, 266 N.C. 238, 145 S.E. 2d 867, it is stated:

". . . Much of the evidence which the trial judge heard was conflicting, but 'where the evidence is merely in conflict on the question as to whether or not a confession was voluntary, the ruling of the court is conclusive on appeal.' *State v. Hammond*, 229 N.C. 108, 47 S.E. 2d 704. The evidence fully supports Judge Bickett's findings. Defendant had and was accorded the right to a preliminary hearing on the competency of his alleged confession. The judge, however, was not required either to believe or to accept his testimony as if it were true."

See also *State v. Outing, supra.*

Here the trial court properly excused the jury, and in the absence of the jury heard evidence from the State and defendant upon the question of the voluntariness of defendant's confession. The court thereupon made findings of fact which were incorporated into the record. The record contains substantial competent evidence to support the trial court's finding that defendant's confession was voluntarily made.

The jury by its verdict found that defendant made the statement. This finding is binding on appeal.

Defendant McVay's assignment of error that the trial court erred in overruling his motion for judgment of nonsuit cannot be sustained.

"The naked extra-judicial confession of guilt by defendant must be supported by evidence *aliunde* which establishes the *corpus delecti.* The *corpus delecti* may be established by direct

or circumstantial evidence. *State v. Cope*, 240 N.C. 244, 81 S.E. 2d 773; *State v. Thomas*, 241 N.C. 337, 85 S.E. 2d 300; *State v. Whittemore*, 255 N.C. 583, 122 S.E. 2d 396." *State v. Bishop*, 272 N.C. 283, 158 S.E. 2d 511.

In the instant case the felonious breaking and entering of the building belonging to Brown-Rogers-Dixson Company and the felonious larceny of personal property therefrom were established *aliunde* the confession of defendant McVay by the testimony of the witness O. K. Tesh. This evidence, when taken in connection with defendant McVay's confession, was sufficient to carry the case to the jury against defendant McVay.

No prejudicial error is made to appear as against defendant McVay.

### APPEAL OF HENRY FRYER.

Henry Fryer's sole assignment of error is that the trial court erred in overruling his motion for judgment as of nonsuit.

The State's case is entirely dependent on the testimony of the witness John Cureton to connect defendant Fryer with the offense with which he is charged.

It is stated in *State v. Lawrence*, 196 N.C. 562, 146 S.E. 395:

> "The competency, admissibility and sufficiency of evidence is for the court to determine, the weight, effect and credibility is for the jury. *S. v. Utley, supra* (126 N.C. 997); *S. v. Blackwelder*, 182 N.C. 899."

Here the Court is not concerned with whether the evidence is *competent*, but the question is whether it is *sufficient* to carry the case to the jury. We further recognize that "It is not the function of the court to pass on the credibility of witnesses or to weigh the testimony." *State v. Hanes*, 268 N.C. 335, 150 S.E. 2d 489.

In the case of *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679, certain well recognized principles of law pertinent to this assignment of error are clearly and concisely stated for the Court by Lake, J., as follows:

> "Upon a motion for judgment as of nonsuit in a criminal action, the evidence must be considered by the court in the light most favorable to the State, all contradictions and discrepancies therein must be resolved in its favor and it must be given the benefit of every reasonable inference to be drawn from the evidence. *State v. Bruton*, 264 N.C. 488, 142 S.E. 2d 169;

*State v. Thompson,* 256 N.C. 593, 124 S.E. 2d 728; *State v. Bass,* 255 N.C. 42, 120 S.E. 2d 580. All of the evidence actually admitted, whether competent or incompetent, including that offered by the defendant, if any, which is favorable to the State, must be taken into account and so considered by the court in ruling upon the motion. *State v. Walker,* 266 N.C. 269, 145 S.E. 2d 833; *State v. Virgil,* 263 N.C. 73, 138 S.E. 2d 777.

"The question for the Court is whether, when all of the evidence is so considered, there is substantial evidence to support a finding both that an offense charged in the bill of indictment, or warrant if it be a case tried upon a warrant, has been committed and that the defendant committed it. *State v. Bass,* 253 N.C. 318, 116 S.E. 2d 772. If, when the evidence is so considered, it is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion for nonsuit should be allowed. *State v. Guffey,* 252 N.C. 60, 112 S.E. 2d 734. This is true even though the suspicion so aroused by the evidence is strong. *State v. Chavis,* 270 N.C. 306, 154 S.E. 2d 340."

Two propositions are involved in the proof of a criminal charge: (1) Proof that a crime has been committed, *i.e.,* proof of the *corpus delecti,* and (2) proof that it was done by the person charged, *i.e.,* proof of the identity of the defendant. *State v. Edwards,* 224 N.C. 577, 31 S.E. 2d 762; *State v. Bass, supra.*

It would be incongruous to submit the question of identity of the defendant to the jury for their determination beyond a reasonable doubt upon the sole testimony of a witness who could not "honestly say that they were the two men."

Considered in the light most favorable to the State and resolving all contradictions and discrepancies in its favor, the testimony of the State's witness was, at best, so equivocal and uncertain as to raise only a suspicion or conjecture as to the identity of the defendant as the perpetrator of the crime.

The trial court erred in overruling defendant Fryer's motion for judgment as of nonsuit.

As to defendant McVay:

No error.

As to defendant Fryer:

Reversed.