STATE OF NORTH CAROLINA v. WILLIAM EDWARD CAMPBELL

No. 7612SC318

(Filed 15 September 1976)

1. **Arrest and Bail § 3— warrantless arrest — reasonable ground to believe felony committed**

    Defendant's warrantless arrest was lawful where the arresting officer had reasonable grounds to believe that defendant had been involved in the commission of a felony based on information given to the officer by a person who, to the officer's knowledge, had been arrested and charged with various breakings and enterings.

2. **Criminal Law § 75— confession made after warrantless arrest — admissibility**

    Defendant's confession made after his warrantless arrest was properly admitted into evidence where there was ample evidence on *voir dire* to support the trial court's conclusion that the confession was made freely, voluntarily, understandingly, and without promise of hope or reward.

3. **Criminal Law § 96— veracity of person questioned — question and answer properly stricken**

    The trial court did not err in striking an exchange between defense counsel and a witness on cross-examination which required the witness to comment on the veracity of a named person.

APPEAL by defendant from *Gavin, Judge.* Judgment entered 2 December 1975 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 26 August 1976.

Defendant was tried and convicted of (1) second-degree burglary and (2) felonious larceny.

The State's evidence tends to show the following: Defendant and a State's witness, Louis Miller, broke and entered an

apartment located at 1143-A Tammy Street and from that apartment carried away, without the permission of the occupant, one portable color television valued at approximately $850.00.

Miller, who had pleaded guilty, was called as a witness for the State and, in summary, testified as follows:

He and defendant had participated in a number of other "B and E's." On the night of this particular crime defendant picked him up at his home and the pair rode around looking for an apartment to burglarize. They entered the apartment on Tammy Street by forcing a window open, then took the television from a bedroom, and hid it in some woods. Later they sold it to Marshall Byrd.

Deputy Sheriff D. M. Capps testified that on the 19th of February, 1975, he had the occasion to arrest the defendant for an offense not related to the present charge. The arrest was made without a warrant and was based, among other things, on information received from one James Madenna, who was under arrest for breaking, entering and larceny on some other unrelated charges and on information that defendant was moving out of his residence. Officer Capps testified that he gave the defendant the *Miranda* warnings and that the defendant signed a written statement acknowledging that he had been fully informed of those rights and that he waived these rights during the interrogation. The defendant, within an hour of his arrest, made a statement to Officer Capps admitting the break-in at the apartment on Tammy Street and the theft of the television. Defendant also had Capps drive around to other places which the defendant pointed out as places he said he had burglarized. Defendant told the deputy of at least one item that had been stolen from each place and, upon investigation, Officer Capps discovered that these places had been burglarized and that the defendant had some knowledge of what had been stolen from each place.

Marshall Byrd testified that he bought the stolen television from Louis Miller, who was accompanied by defendant, for $135.00. He testified that the defendant and Louis Miller came to his house and asked him to take them to pick up the set. Byrd, according to his testimony, drove the pair to a mobile home on Tammy Street and waited in the car while Miller and the defendant went to retrieve the set from the woods. They put the television in Byrd's car and Byrd drove them to the

---

State v. Campbell

---

defendant's trailer where the television was tested. The three then reloaded the set into Byrd's vehicle and took it to Byrd's house for approval of the purchase by Byrd's wife. Byrd then purchased the set.

Defendant Campbell testified that although he confessed to Officer Capps that he had burglarized 1143-A Tammy Street, he confessed to that particular burglary and pointed out to Officer Capps other places he had allegedly burglarized only because the deputy had promised to release defendant's girl friend, Laura Melvin, who had been taken into custody when defendant was arrested at his trailer, if he would cooperate with the deputy and confess. He said he did not know that the television Miller sold Byrd, in his presence, was stolen until two or three days after the sale. The defendant also claimed that all of the places he pointed out to Deputy Capps as having been burglarized by him were places that Louis Miller had told him that Miller had burglarized.

Laura Melvin, the defendant's girl friend, testified that at the time of the alleged burglary and of the arrest of the defendant on February 19, 1975, she was living with the defendant. She said that the deputies arrested her at the time of the defendant's arrest for being an accessory after the fact, though she was never officially charged with any crime. She testified that she was given the *Miranda* warnings and was taken to the Sheriff's Department. At the Sheriff's Department she overheard Capps tell the defendant that he would release her if the defendant would confess to the crimes.

The jury returned a verdict of guilty on both the charges for second-degree burglary and felonious larceny. From a judgment of imprisonment, the defendant appealed.

*Attorney General Edmisten, by Associate Attorney Cynthia Jean Zeliff, for the State.*

*William R. Davis, for defendant appellant.*

VAUGHN, Judge.

On appeal the defendant contends that his arrest by Deputy Capps was unlawful because it was not made in compliance with the provisions of G.S. § 15-41(2) (then in effect) and that as a result of this illegal arrest his confession, which was given shortly thereafter, should be inadmissible because it was tainted

State v. Campbell

by the illegal arrest. We do not pass on whether the question was properly raised at trial but will dispose of it on the merits.

[1]   G.S. § 15-41(2) in pertinent part provided: "A peace officer may without a warrant arrest a person . . . [w]hen the officer has reasonable ground to believe that the person to be arrested has committed a felony and will evade arrest if not immediately taken into custody." An officer need not show that a felony has actually been committed. It is only necessary for the officer to have reasonable ground to believe that such an offense has been committed. *State v. Shore,* 285 N.C. 328, 204 S.E. 2d 682 (1974). A warrantless arrest is based upon probable cause if the facts and circumstances known to the arresting officer warrant a prudent man in believing that a felony has been committed and the person to be arrested is a felon. *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed. 2d 62 (1967); *State v. Shore, supra.* We hold that the evidence supports the conclusion that the officer had reasonable grounds to believe that the defendant had been involved in the commission of a felony based on information given to the officer by Madenna, who, to the officer's knowledge, had been arrested and charged with various breakings and enterings.

[2]   Although we have no difficulty in concluding that the arrest was lawful, even an unlawful arrest does not, standing alone, make a subsequent confession unlawful. The question is whether, under all the circumstances, the confession is voluntary. The judge, in this case, conducted a *voir dire* hearing on the voluntariness of the defendant's confession and his findings were that the confession was intelligently, knowingly and voluntarily made by the defendant after he had been fully advised of his constitutional rights and had waived those rights. The judge found further that the defendant was not under the influence of drugs or alcohol and was physically and mentally competent. It was further found that Officer Capps made no offer of hope, reward, or inducement nor did he employ threats, suggested violence or show of violence to persuade or induce the defendant to make a statement. Moreover on *voir dire* the only reason suggested by defendant for making the confession was that he had been led to believe that if he admitted his role in the crimes his girl friend would be released. Even if the judge had believed that testimony it would not compel a finding that the confession was involuntary. Where the trial court finds upon *voir dire* from conflicting evidence that the confession was

voluntarily and freely made after defendant had been advised of his rights, the findings, if supported by evidence, are binding on appeal. *State v. Clyburn,* 273 N.C. 284, 159 S.E. 2d 868 (1968).

[3] The defendant further assigns as error that the trial court commented on the truthfulness of a witness for the State by striking the defense counsel's question and the witness's answer to the question on cross-examination. The exchange in question is the following:

> "Q. So if Alexander Miller were to say it was six weeks later, he'd be lying, wouldn't he?
>
> A. Yes, sir.
>
> THE COURT: Well, members of the jury, do not consider that statement; I'm not going to let anybody call a witness or anyone else a liar in my court. It's for the jury to determine the credibility of a witness."

The limits of legitimate cross-examination are largely within the discretion of the trial judge, and his ruling thereon will not be held error in absence of showing that the verdict was improperly influenced thereby. *State v. McPherson,* 276 N.C. 482, 172 S.E. 2d 50 (1970). The trial court was correct in striking the question and answer and in instructing the jury to disregard the exchange because the question and answer were highly improper.

The defendant next contends that the trial judge erred when he encouraged the defendant to make a statement he had indicated earlier that he wanted to make. When the trial court, after a *voir dire* examination of the defendant to determine the competency of the defendant's explanation of his prior testimony, allowed the defendant to make such an explanation in the presence of the jury, the court committed no error. That the judge reminded the defendant of what he had said he wanted to explain did not constitute error.

We have examined the 12th assignment of error wherein defendant brings forward an exception to the judge's instruction on the effect of a variance between the date of the offense as alleged in the indictment and as shown by some of the testimony. When that instruction is considered in the light of all of the evidence at trial, we conclude that it could not have affected the verdict of the jury.

We have also considered the assignments of error not discussed in this opinion. We conclude that defendant had a fair trial that was free of error so prejudicial as to require a new trial.

No error.

Judges Morris and Clark concur.