GEER, Judge.
Defendant Gloria Dale Wilkerson was charged with sale of cocaine, delivery of cocaine, and possession of cocaine with intent to sell or deliver. She appeals from the trial court's denial of her motion to dismiss, arguing that there is insufficient evidence in the record to show that she actually possessed cocaine. Based upon our review of the evidence, we hold that the trial court did not err.
Facts
During the evening of 10 April 2002, Officer Jerry Husketh of the Durham Police Department went to defendant's house in response to a complaint about ongoing activities at the residence. Upon arriving at the residence, Officer Husketh saw defendant standingin front of her house talking to someone inside of a Volvo. The conversation lasted approximately three minutes. Because this interaction fit one of the established profiles for a drug transaction, Officer Husketh decided to surveil defendant's residence. He stood about 150 feet from defendant's house and had a clear view of the street in front of the house, the front lawn, and the porch of the house, all of which were well lit. Officer Husketh also used binoculars.
Four minutes after beginning his surveillance, Officer Husketh observed a black Honda arrive at the intersection near defendant's house. A man emerged from the car and walked to defendant's front door. Defendant answered the door, stepped out onto the porch, and talked to the man for a few minutes before she went back inside. Less than thirty seconds later, defendant came back outside, received what appeared to be money from the man, and then placed a small item in the man's hand. The man returned to the Honda and got into the passenger side of the car. The entire transaction took less than three minutes.
Officer Husketh radioed Officers Jonathan Craig and Charles Barkley, who were stationed nearby, and gave them a description of the Honda and its occupants. There were no other black Hondas in the area at that time. Officers Craig and Barkley saw the Honda less than a minute later and stopped it. A search of the Honda revealed two rocks of crack cocaine on the floor in front of the passenger seat. One of the crack cocaine rocks was in packaging made from a plastic baggie corner, while the other rock wasunwrapped. The passenger, Gregory Holloway, admitted possession of the crack cocaine. In addition, a search of Mr. Holloway uncovered a torn baggie corner and a crack pipe in his pocket.
While the other officers were conducting the stop of the Honda, Officer Husketh continued his surveillance of defendant's house for another 30 minutes. During that time, he saw eight cars and three pedestrians approach defendant's house.
The following day, Officer Husketh obtained and executed two search warrants for defendant's home. The officers found sandwich baggies with missing corners, separated baggie corners, a knot from a drug baggie, a razor blade, and $3,750.00 in cash. Officer Husketh testified that such items are routinely found at locations where drug activity is ongoing because these materials are associated with the packaging and sale of drugs. Additionally, the officers found a brown cigar with "green vegetable matter," later identified as marijuana, and a spoon containing cocaine.
Defendant was subsequently arrested and taken to the magistrate's office. While at the magistrate's office, defendant stated: "I told you that I ain't sold no drugs today. I'm going to call my lawyer . . . and I'll be out doing my thing again. You ain't caught me with shit or nothing. You ain't catch me with no drugs."
Defendant was indicted on 3 March 2003 for (1) possession of cocaine with intent to sell and deliver, (2) sale of cocaine, and (3) delivery of cocaine. The jury found defendant guilty of all three charges. The trial judge imposed a sentence of 14 to 17months on the charge of sale of cocaine and supervised probation for 36 months with a suspended sentence of eight to ten months for possession with intent to sell and deliver cocaine. The judge arrested judgment on the charge of delivery of cocaine.
Discussion
On appeal, defendant assigns error only to the trial court's denial of her motion to dismiss made at the conclusion of the State's evidence. When considering a motion to dismiss, a court must determine if the State has presented substantial evidence of each essential element of the offense and that defendant is the perpetrator of the offense. State v. Robinson, 355 N.C. 320, 336, 561 S.E.2d 245, 255, cert. denied, 537 U.S. 1006, 154 L. Ed. 2d 404, 123 S. Ct. 488 (2002). "'Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion.'" Id. (quoting State v. Parker, 354 N.C. 268, 278, 553 S.E.2d 885, 894 (2001)). When considering whether the State has presented substantial evidence, the court must view all of the evidence presented "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Rose, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), cert. denied, 515 U.S. 1135, 132 L. Ed. 2d 818, 115 S. Ct. 2565 (1995).
In North Carolina, it is unlawful for any person to "manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance." N.C. Gen. Stat. § 90-95(a)(1) (2003). "[T]he language of N.C.G.S. § 90-95(a)(1) creates three offenses: (1) manufacture of a controlled substance, (2) transfer of a controlled substance by sale or delivery, and (3) possession with intent to manufacture, sell or deliver a controlled substance." State v. Moore, 327 N.C. 378, 381, 395 S.E.2d 124, 126 (1990) . In order to prove a charge of possession with intent to sell or deliver, the State must prove (1) that the defendant possessed a narcotic and (2) that he intended to sell or deliver it. State v. Creason, 313 N.C. 122, 129, 326 S.E.2d 24, 28 (1985). The charges of sale and delivery are considered separate offenses, although both involve the transfer of narcotics. Id. A sale of narcotics is a transfer of drugs for a specific price, while delivery of narcotics is an attempted or actual transfer of drugs from one to another. Moore, 327 N.C. at 382, 395 S.E.2d at 127. For both crimes, the defendant logically must have possessed the narcotics initially in order to be able to transfer or sell them.
In her brief, defendant does not address the charges individually, but instead argues that there is no direct evidence that defendant ever possessed any cocaine or that Mr. Holloway obtained his cocaine from defendant. Defendant relies upon State v. Chavis, 270 N.C. 306, 154 S.E.2d 340 (1967) to support her argument that the State's evidence was insufficient to overcome a motion to dismiss. In Chavis, the Court held that possession of marijuana was not proven when the State's evidence showed only that the defendant was observed wearing a gray felt hat, he later was seen without the hat, defendant claimed the hat was borrowed and hereturned it, and the hat - containing marijuana - was found approximately 30 minutes later in knee-deep grass. Id. at 310, 154 S.E.2d at 344. The Court explained:
There is no evidence that either officer observed defendant make any disposition of the hat he had been wearing or of any article or articles he may have had in his possession. . . .
The identity of the person who had possession of the marijuana prior to the discovery thereof by [the officer] is not disclosed. Did defendant put the marijuana in the hat found by the officers? Was it put there by defendant's unidentified companion? Was it put there before or after defendant and his companion left the area where the hat was found, walked back towards Hillsboro Street and were accosted by the officers? There was no evidence the marijuana was in a hat while defendant was wearing it. Nor was there evidence the marijuana was put in the hat found by the officers at defendant's direction.
Id. at 310-11, 154 S.E.2d at 344. The Court held the evidence raised only a "strong suspicion" of guilt. Id. at 311, 154 S.E.2d at 344.
By contrast, the State's evidence in this case constituted a continuous chain of circumstances without the gaps present in Chavis. The evidence before the trial court offered an explanation for where the drugs came from and supports the conclusion that the defendant actually possessed cocaine, where the evidence in Chavis did not. See id. ("Here, the evidence, in our opinion, falls short of being sufficient to support a finding that the marijuana found by the officers in and on a hat in the high grass was in the possession of defendant when he was first observed and followed by the officers.").
Viewing the evidence in the light most favorable to the State and drawing all inferences in its favor, the evidence shows that Officer Husketh saw a transaction occur on the front steps of defendant's house in which defendant gave Mr. Holloway a small item for money. Less than one minute after Mr. Holloway left the house in a black Honda, officers stopped the Honda and discovered that Mr. Holloway had possession of two rocks of crack cocaine. One of the rocks appeared newly unwrapped from its baggie corner. Additionally, Officer Husketh observed defendant engaging in activity consistent with drug dealing, and a search of defendant's house uncovered a significant amount of drug packaging materials (of the same type used with Mr. Holloway's crack cocaine), drug paraphernalia, and a large amount of cash. See State v. Davis, 97 N.C. App. 259, 264, 388 S.E.2d 201, 204 (distinguishing Chavis and noting that other circumstantial evidence supported the charge of possession of cocaine), aff'd per curiam, 327 N.C. 467, 396 S.E.2d 324 (1990).
This evidence is sufficient to permit a jury to conclude that Mr. Holloway obtained his crack cocaine from defendant and that defendant possessed the cocaine with the intent to sell or deliver it. See id. (finding sufficient circumstantial evidence of possession for the trial court to deny a motion to dismiss where cocaine was located in a crack in the wall and the defendant had been seen kneeling near where the cocaine was found); State v.Hall, 73 N.C. App. 101, 105, 325 S.E.2d 639, 641 (1985) (ruling that possession charges should not have been dismissed by the trial court when officers saw the defendant throw a bottle over a fence and later found a bottle on the other side of the fence containing heroin); State v. Howard, 35 N.C. App. 762, 764, 242 S.E.2d 507, 508 (1978) ("The reasonable inference to be drawn from [evidence showing that the defendant dropped pieces of paper and an officer immediately walked over and found narcotics inside of envelopes], considering it in the light most favorable to the State" was that the defendant possessed narcotics, but disposed of them when he saw the officers).
Accordingly, the trial court did not err in denying defendant's motion to dismiss.
No error.
Judges LEVINSON and THORNBURG concur.
Report per Rule 30(e).