STATE OF NORTH CAROLINA v. RUDOLPH CEPHUS ACOLATSE, Defendant

No. COA02-824

(Filed 17 June 2003)

**Drugs— constructive possession—sufficiency of evidence**

The premises on which cocaine was found were not under defendant's control and the State failed to present incriminating circumstances from which constructive possession could be

inferred. Defendant was on or near the sidewalk in front of a house used for car detailing when officers approached; he fled and was chased from a sidewalk into bushes behind a detached garage; defendant did not own or live in the house; an officer saw defendant make a throwing motion toward the bushes but not the garage; and nothing was found in the bushes but five bags of cocaine were found on the roof of the garage.

Appeal by defendant from judgment entered 28 June 2001 by Judge Howard R. Greeson, Jr. in Superior Court, Forsyth County. Heard in the Court of Appeals 13 May 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Edwin Lee Gavin, II, for the State.*

*Robert T. Newman, Sr. for the defendant-appellant.*

WYNN, Judge.

Following his conviction on drug-related charges, defendant contends on appeal that the trial court erroneously failed to dismiss the charges against him. For the reasons given by our Supreme Court in *State v. Chavis,* 270 N.C. 306, 154 S.E.2d 340 (1967), we are compelled to hold that the record in this case shows that the evidence raised only a suspicion of possession; accordingly, we reverse defendant's convictions.

The underlying facts of this case tend to show that while waiting on 29 August 2000 for a tax warrant to seize an unoccupied black Mercedes, Winston Salem Police Detectives K. L. Jones, Matt Morgan, Priscilla Thomas, Curtis Richardson, and Mike Cardwell saw defendant, Rudolph Cephus Acolatse, drive up and park his vehicle behind the Mercedes. Although defendant did not own the Mercedes under surveillance, the detectives determined that he was driving with a revoked license. However, when the detectives attempted to approach defendant who was now outside of his car talking on a cell phone, defendant ran along the left side of the house nearest to the parked Mercedes. Detective Richardson responded by pursuing him along the left side of the house; and, he could see the defendant at all times until the detective encountered a pit bull dog near a detached garage. He lost sight of defendant for approximately ten seconds.

In the meantime, Detective Thomas, upon seeing Detective Richardson run around the left side of the house, ran around the right

side of the house to trap defendant. Once Detective Thomas rounded the house, she did not see defendant. She went to the corner of a shed in the backyard and immediately saw defendant standing near a fence in some bushes.

Detective Cardwell also ran around the right side of the house. Upon rounding the house, the detective saw defendant approaching the rear of the storage building and was in between an old vehicle parked there and the wall of the storage building. Detective Cardwell went towards the fence because he felt defendant was going to jump over the fence. Detective Cardwell stated Detective Thomas was closer to the storage shed. Detective Cardwell did not see defendant make a throwing motion.

Detective Jones remained in front of the house near the vehicles during the chase and Detective Morgan ran to another street to intercept defendant if he ran out onto that street. After defendant ran around the corner of the house, neither Detective Jones nor Morgan saw defendant again until he was in custody.

After defendant's arrest, Detective Thomas told the other detectives she saw defendant make a throwing motion towards the bushes. Detective Jones, a K-9 officer, searched the area with her dog. Nothing was found in the bushes. However, the dog alerted to the odor of narcotics near a detached garage. The detectives then found five bags of cocaine, 39.6 grams, on the roof of the detached garage in an area that was not located near the bushes. There were no fingerprints on the bags. Defendant did not own or reside at the house next to the detached garage, and the detectives testified they did not know who owned the house. The detectives also searched defendant's car, but no drugs were found. The detectives found a cell phone in defendant's car and found the cell phone on which defendant had been talking in the front yard. A third phone was also recovered. Defendant had $830.00 in cash on his person.

After a trial, defendant was convicted of possession with intent to sell and deliver cocaine and trafficking in cocaine by possession, sentenced to a term of 35 months to 42 months and fined $50,000. He appealed.

---

On appeal, the defendant contends the trial court erroneously denied his motion to dismiss the charges based upon insufficient evidence. "The standard for ruling on a motion to dismiss is whether there is substantial evidence (1) of each essential element of the

offense charged and (2) that defendant is the perpetrator of the offense. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. In determining the sufficiency of the evidence the trial court must consider such evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom." *State v. Harris*, 145 N.C. App. 570, 578, 551 S.E.2d 499, 504 (2001).

"Under the charge of possession with the intent to sell or deliver cocaine, the State has the burden of proving: (1) the defendant possessed the controlled substance; and (2) with the intent to sell or distribute it." *State v. Diaz*, 155 N.C. App. 307, 319, 575 S.E.2d 523, 531 (2002). "To prove the offense of trafficking in cocaine by possession, the State must show 1) knowing possession of cocaine and 2) that the amount possessed was 28 grams or more." *State v. White*, 104 N.C. App. 165, 168, 408 S.E.2d 871, 873-74 (1991); *see also* N.C. Gen. Stat. § 90-95(h)(3)(a). Since the State had no evidence to show that defendant actually possessed the cocaine, the State sought to prove the possession element of trafficking in cocaine by possession or possession with the intent to sell and deliver cocaine by constructive possession. *See State v. Wilder*, 124 N.C. App. 136, 139-40, 476 S.E.2d 394, 397 (1996); *State v. Diaz*, 155 N.C. App. 307, 313-14, 575 S.E.2d 523, 528-29 (2002).

"Constructive possession occurs when a person lacks actual physical possession, but nonetheless has the intent and power to maintain control over the disposition and use of the substance." *State v. Wilder,* 124 N.C. App. 136, 139-40, 476 S.E.2d 394, 397 (1996). "Where a controlled substance is found on premises under the defendant's control, this fact alone may be sufficient to overcome a motion to dismiss and to take the case to the jury. If a defendant does not maintain control of the premises, however, other incriminating circumstances must be established for constructive possession to be inferred." *State v. Neal*, 109 N.C. App. 684, 686, 428 S.E.2d 287, 289 (1993).

In this case, the cocaine evidence was found on the roof of a detached garage in the backyard of a residence. The defendant did not own the residence and the detectives testified they did not know who owned the premises. Prior to being chased by the detectives, the defendant was in the front area of the residence near the sidewalk at all times. Under these facts, the premises were not under the defendant's control. Accordingly, the State must demon-

strate other incriminating circumstances to raise an inference of constructive possession.

The State contends the evidence placing the defendant in close juxtaposition to the cocaine, the money ($830.00) found on defendant's person in denominations consistent with the sale of controlled substances and the defendant's throwing motion are sufficient incriminating circumstances from which one can infer constructive possession. We disagree.

In *State v. Chavis*, our Supreme Court reversed the defendant's conviction for felonious possession of marijuana even though the evidence invoked a strong suspicion that the defendant had constructive possession of the marijuana. In *Chavis*, the police had been following the defendant for several blocks and had been close enough to touch the defendant if they so desired. They observed the defendant wearing gray trousers, a three-quarter length coat and a gray felt hat. They watched the defendant as he and another man talked and walked across a vacant lot and down a street. The "defendant and his companion were observed by the officers continuously except for two or three seconds when the headlights of . . . a car . . . caused the officers to step back out of the glare of the headlights to avoid disclosure of their presence." The officers then crossed the street and continued to watch the men for approximately one minute until the defendant began walking back towards the officers. The officers stopped the defendant and searched him. At the time of the search, the defendant was bareheaded. The officers searched the area and thirty minutes later, they found a hat identical to the one the defendant had been wearing approximately four or five feet from where the police had observed the defendant and his companion talking. The police found marijuana in the crown of the hat. *Chavis*, 270 N.C. 306, 306-09, 154 S.E.2d 340, 341-43 (1967). In reversing the defendant's conviction in *Chavis*, our Supreme Court acknowledged the evidence against the defendant was strong enough to raise a suspicion that the defendant possessed the marijuana; however, the evidence was not substantial enough to present the case to the jury. *Chavis*, 270 N.C. at 311, 154 S.E.2d at 344. Following *Chavis*, we are compelled to hold that substantial evidence of possession was not presented in this case.

In this case, the evidence viewed in the light most favorable to the State shows the detectives were in front of a residence conducting surveillance upon a convicted drug dealer's automobile when defendant drove up and parked in front of the residence frequented by people for car detailing services. The automobile under surveil-

lance did not belong to defendant. Defendant was in the front area of another person's residence near the sidewalk talking on a cell phone and approaching his car when the detectives approached him to question him about driving with a revoked license. Defendant looked up, saw the officers and ran around the left side of the residence down the driveway. Four detectives pursued defendant. Defendant was apprehended in the bushes behind the detached garage near a fence after a police officer saw him make a straight throwing motion towards the bushes. Nothing was found in the bushes; however, drugs were found on the roof of the detached garage. One of the detectives testified the twenty-five foot roof line where the drugs were found was in a different direction from the bushes. The bushes were either directly across from the roof or off to a ninety degree angle. None of the detectives saw the defendant throw anything on the roof and no fingerprints were found on the bags of cocaine. Although the odor of cocaine was detected in the defendant's vehicle, no drugs were found in the vehicle.

At trial, the State contended the cocaine odor in the defendant's vehicle combined with the belief that during the few seconds the defendant was out of the detectives' view, the defendant had enough time to throw the drugs onto the roof was enough to establish possession. However, *Chavis* dictates that this evidence only raises a suspicion of possession. "If the evidence is sufficient merely to raise a suspicion or conjecture as to any element of the offense, even if the suspicion is strong, the motion to dismiss should be allowed." *State v. Thomas*, 329 N.C. 423, 433, 407 S.E.2d 141, 148 (1991). "This is true even though the suspicion aroused by the evidence is strong." *State v. Ledford*, 23 N.C. App. 314, 316, 208 S.E.2d 870 (1974) (where constructive possession of LSD was not established even though the police observed the defendant go near the location where the drugs were found several times); *see also State v. Chavis*, 270 N.C. 306, 154 S.E.2d 340 (1967).

In sum, we must hold under our Supreme Court's decision in *Chavis* that the State has failed to present any incriminating circumstances from which one can infer constructive possession. *See State v. Alston*, 131 N.C. App. 514, 519, 508 S.E.2d 315, 318 (1998) (stating there must be more than mere association or presence linking the person to the item in order to establish constructive possession); *State v. Neal*, 109 N.C. App. 684, 687-88, 428 S.E.2d 287, 289-90 (1993) (describing evidence of a defendant's presence in a closed room which contained the controlled substance coupled with the fact the

defendant had a large amount of cash on his person and another case in which there was evidence of the defendant fleeing from, not to, the area where illegal drugs were found as two cases in which there were sufficient incriminating circumstances); *State v. Wilder*, 124 N.C. App. 136, 476 S.E.2d 394 (1996) (constructive possession established where defendant threw a white substance into the bushes, cocaine was later found in the bushes into which the defendant had thrown, and after the police left, the defendant's friends searched the bushes for the cocaine); *State v. King*, 99 N.C. App. 283, 288, 393 S.E.2d 152, 155 (1990) (where this Court identified three typical situations [in which constructive possession has been established] regarding the premises where drugs were found: (1) some exclusive possessory interest in the defendant and evidence of defendant's presence there, (2) sole or joint physical custody of the premises of which defendant is not an owner; and (3) in an area frequented by defendant, usually near defendant's property.).

Reversed.

Judges McCULLOUGH and ELMORE concur.