STATE OF NORTH CAROLINA v. CHRISTOPHER BOYCE LOFTIS

No. COA06-728

(Filed 7 August 2007)

**1. Constitutional Law— right to remain silent—comment defendant did not want to make statement after Miranda rights**

The trial court did not commit plain error in a drug trafficking case by allowing an officer to testify that after she read defendant his Miranda rights, defendant did not want to make any statements, because even assuming arguendo that the admission of this testimony was error in the present case, it did not amount to plain error when: (1) the State made only one brief reference to defendant's post-arrest silence; (2) the State did not reinforce this improper evidence in its closing argument; (3) the reference to defendant's post-arrest silence was not a direct attack on defendant's version of events, but was merely a passing reference that was likely disregarded by the jury; (4) the State did not offer evidence that defendant invoked his right to remain silent in the face of an accusation, and thus invocation of the right could not have been viewed as a confession of guilt; and (5) absent admission of the officer's testimony, the jury would not have reached a different verdict.

**2. Drugs— trafficking—motions to dismiss—sufficiency of evidence—constructive possession**

The trial court did not err by denying defendant's motions to dismiss drug trafficking charges because the State sufficiently provided incriminating circumstances to establish that defendant had constructive possession of methamphetamine and precursor chemicals including that (1) defendant was found inside a locked shed with the methamphetamine and precursor chemicals, a jar of unknown liquid containing methamphetamine was on a heater that was still warm to the touch, and a letter was found in the shed that was addressed to defendant containing confidential tax information; and (2) defendant was the only person seen entering and leaving the shed that evening, and there was no evidence that anyone else's belongings were inside the shed.

**3. Evidence— involvement of another person—defendant's address at time of arrest**

The trial court did not err in a drug trafficking case by excluding evidence of law enforcement's suspicions of the involvement of another person and evidence of defendant's address at the time of his arrest, because: (1) although defendant contends excluding evidence of the other person's prior use of methamphetamine and her prior violation of probation violated his constitutional right to present a defense, this argument is waived based on defendant's failure to make it at trial; (2) even if this assignment of error had been preserved, the evidence of the other person's involvement did not disprove any of the evidence against defendant; (3) the evidence of the other person's probation violation had not yet been adjudicated at the time of defendant's trial; and (4) evidence that the address on the envelope introduced by the State was different from defendant's address at the time of his arrest only proved defendant had moved between January 2004 and April 2004.

**4. Constitutional Law— effective assistance of counsel—dismissal of claim without prejudice**

Defendant's claim that he received ineffective assistance of counsel is dismissed without prejudice to defendant's right to raise this claim in a post-conviction motion for appropriate relief because there was insufficient information in the record regarding trial counsel's strategy.

Appeal by Defendant from judgments dated 27 September 2005 by Judge Ronald K. Payne in Superior Court, McDowell County. Heard in the Court of Appeals 10 April 2007.

*Attorney General Roy Cooper, by Special Counsel to Attorney General Jay J. Chaudhuri, for the State.*

*Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for Defendant-Appellant.*

McGEE, Judge.

Christopher Boyce Loftis (Defendant) was indicted on 17 May 2005 on charges of trafficking in more than 400 grams of methamphetamine by possession; trafficking in more than 400 grams of methamphetamine by manufacture; possession of a precursor chemi-

STATE v. LOFTIS

[185 N.C. App. 190 (2007)]

cal, pseudoephedrine, with intent to manufacture methamphetamine; possession of a precursor chemical, iodine, with intent to manufacture methamphetamine; and possession of a precursor chemical, red phosphorus, with intent to manufacture methamphetamine.

At trial, the State presented evidence that shortly before midnight on 3 April 2004, Max Boyd (Mr. Boyd) noticed that a light was on in a shed on his property. The shed was located near a house where Mr. Boyd's daughter, Elizabeth Boyd Brinkley (Ms. Brinkley) lived. The house was owned by Mr. Boyd. When Mr. Boyd saw movement in the shed, he tried to open the door, but the door was locked from the inside with a chain. Mr. Boyd yelled for the person inside the shed to open the door. A person opened the door and stepped out and Mr. Boyd recognized that person as Defendant. Mr. Boyd told Defendant to leave, and Defendant left. Mr. Boyd then looked inside the shed and saw objects that "looked like something that wasn't supposed to be in there" and immediately used his cell phone to contact law enforcement. Mr. Boyd further testified that on previous occasions he had seen Defendant on his property when Defendant visited one of Mr. Boyd's tenants.

Lieutenant Jackie Turner, Jr. (Lieutenant Turner) of the McDowell County Sheriff's Office testified that he responded to a call at Mr. Boyd's property late on the evening of 3 April 2004. Lieutenant Turner stated that he met with Mr. Boyd, who showed him the shed on his property. Lieutenant Turner looked inside the shed and saw what he believed to be a methamphetamine lab. Lieutenant Turner then developed a log to ensure that an officer remained by the site until agents arrived from the North Carolina State Bureau of Investigation (SBI).

SBI agents searched the shed at approximately noon on 5 April 2004. The agents found many items commonly used in the manufacture of methamphetamine, including iodine, pseudoephedrine, and red phosphorus. They also found two bottles containing a total of 2,090 grams of liquid later determined to contain methamphetamine. The agents also discovered a jar containing an unknown liquid on a heater that was still warm to the touch, and other materials commonly used in the manufacturing of methamphetamine.

Shannon Smith, a narcotics investigator for the McDowell County Sheriff's Office (Officer Smith), testified that she did not conduct a fingerprint examination of the shed because it was difficult to obtain fingerprints from some of the materials. Officer Smith admitted that she could have requested the SBI to perform a fingerprint examina-

STATE v. LOFTIS

[185 N.C. App. 190 (2007)]

tion of the shed and its contents, but did not do so. Officer Smith had previously investigated Mr. Boyd's property, and she believed Mr. Boyd's daughter, Ms. Brinkley, to be a suspect, though Ms. Brinkley was not charged. Officer Smith further testified as follows:

Q. After the crime scene was processed on the 5th, what was your next involvement with this case?

A. Next involvement was, I guess, probably several months later. I was contacted by one of the deputies there, they had [Defendant] in custody. And I came back to the Sheriff's Office in an attempt to do an interview.

Q. And did you read [Defendant] his rights?

A. Yes, I did.

Q. And did [Defendant] indicate to you that he understood each of those rights?

A. Yes, he did.

. . . .

Q. And did [Defendant] make any further statements at that point?

A. No, he did not want to make any statements.

Q. Did you have any other involvement with the case at that point?

A. No, sir.

Officer Smith identified a letter found inside the shed. The envelope was addressed to Defendant at 6276 Buck Creek Road in Marion, North Carolina; not to Mr. Boyd's address, nor to the address where Defendant was arrested. The envelope was postmarked 20 January 2004 and contained a 2003 tax document of Defendant's from the Employment Security Commission.

At the close of the State's evidence, Defendant moved to dismiss all charges, and the trial court denied the motion. Defendant did not present evidence and again moved to dismiss the charges. The trial court again denied Defendant's motion. The jury found Defendant guilty of all charges. The trial court sentenced Defendant to a term of 225 months to 279 months in prison on the two trafficking charges. The trial court suspended the sentences on the remaining charges

and sentenced Defendant to thirty-six months of supervised probation to begin at the expiration of Defendant's prison sentence. Defendant appeals.

I.

[1] Defendant argues the trial court committed plain error by allowing Officer Smith to testify that after she read Defendant his *Miranda* rights, Defendant "did not want to make any statements." Defendant argues the evidence that Defendant invoked his constitutional right to remain silent constituted plain error because it had a probable impact on the jury's finding of guilt. We disagree.

In a criminal proceeding, appellate review of questions not objected to at trial is limited to plain error. N.C.R. App. P. 10(c)(4). In evaluating whether or not "an error by the trial court amounts to 'plain error,' the appellate court must be convinced that absent the error the jury probably would have reached a different verdict." *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986) (citing *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378-79 (1983)).

"We have consistently held that the State may not introduce evidence that a defendant exercised his fifth amendment right to remain silent." *State v. Ladd*, 308 N.C. 272, 283, 302 S.E.2d 164, 171 (1983). However, even assuming *arguendo* that the admission of this testimony was error in the present case, we hold that it did not amount to plain error.

In support of his argument that the admission of this evidence amounted to plain error, Defendant cites *State v. Hoyle*, 325 N.C. 232, 382 S.E.2d 752 (1989), and *State v. Castor*, 285 N.C. 286, 204 S.E.2d 848 (1974). However, these cases are distinguishable.

In *Hoyle*, police advised the defendant of his *Miranda* rights, and the defendant answered some of their questions. *Hoyle*, 325 N.C. at 234, 382 S.E.2d at 753. However, when police asked the defendant what occurred when the victim followed the defendant back to the defendant's truck, the defendant invoked his constitutional right not to answer. *Id.* At trial, the defendant testified that after the victim followed him back to the defendant's truck, the victim attacked him, and after a struggle for a gun, the gun discharged, killing the victim. *Id.* The State attempted to impeach this theory by making three references to the defendant's post-arrest silence. *Id.* at 235-36, 382 S.E.2d at 753-54. The State first referenced the defendant's post-arrest silence during direct examination of a police detective;

the State next referenced the defendant's post-arrest silence during cross-examination of the defendant; and the State also referenced the defendant's silence during its closing argument. *Id.* The defendant timely objected to the State's questions at trial. *Id.*

The Court recognized that because there was no eyewitness to the shooting other than the defendant, the defendant's defense "depended on the jury's acceptance of his version of the event." *Id.* at 237, 382 S.E.2d at 754. Therefore, the Court held that the State could not demonstrate that it was harmless error to allow the State to attack the defendant's version of events by improper evidence, which the State reinforced by jury argument. *Id.*

In the present case, unlike in *Hoyle*, the State made only one brief reference to Defendant's post-arrest silence. Furthermore, the State did not reinforce this improper evidence in its closing argument. Moreover, the reference to Defendant's post-arrest silence was not a direct attack on Defendant's version of events, as was the case in *Hoyle*; it was merely a passing reference that was likely disregarded by the jury.

Defendant also cites *Castor* in his argument that the admission of Officer Smith's testimony constituted plain error. In *Castor*, an SBI agent testified over the defendant's objection that a witness made a statement in the defendant's presence, accusing the defendant of the crime charged, and the defendant did not deny or object to the statement. *Castor*, 285 N.C. at 289, 204 S.E.2d at 851. A jury instruction also allowed the jury to "consider the defendant's silence together with all other facts and circumstances in this case in determining the defendant's guilt or innocence." *Id.*

In *Castor*, the Court held that the erroneous admission of this testimony was prejudicial, noting that if true, the statements "were sufficient to establish that [the] defendant was the person who committed the crime charged in the indictment." *Id.* at 292, 204 S.E.2d at 853. The Court further recognized that "[i]f considered an admission of the truthfulness of these statements, [the] defendant's silence would be the equivalent of a confession of guilt." *Id.* "Under [the] circumstances, it seem[ed] probable the challenged evidence contributed substantially to the conviction of [the] defendant." *Id.* at 292-93, 204 S.E.2d at 853.

Officer Smith's testimony in the case before us was not of the same nature as the testimony in *Castor*. In *Castor*, the defendant

remained silent in the presence of a witness who implicated the defendant in the crime with which the defendant was charged. *Id.* at 289, 204 S.E.2d at 851. Moreover, if the jury had accepted the defendant's silence as an admission, the defendant's silence would have been the equivalent of a confession of guilt. *Id.* at 292, 204 S.E.2d at 853. In the present case, the State did not offer evidence that Defendant invoked his right to remain silent in the face of an accusation. Accordingly, the invocation of Defendant's right to remain silent could not have been viewed as a confession of guilt. We further note that in both *Hoyle* and *Castor*, the defendants made timely objections at trial to the improper evidence. Thus, they were not held to the plain error standard of review. Applying the plain error standard to the present case, we cannot hold that absent the admission of Officer Smith's testimony, "the jury probably would have reached a different verdict." *Walker*, 316 N.C. at 39, 340 S.E.2d at 83. This assignment of error is overruled.

## II.

**[2]** In his next assignment of error, Defendant argues the trial court erred by denying his motions to dismiss. Specifically, Defendant argues the State failed to prove that he had constructive possession of the methamphetamine or precursor chemicals. We disagree.

When a defendant makes a motion to dismiss, "the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980).

The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion.

*Id.* at 99, 261 S.E.2d at 117. However, "[i]f the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed." *Id.* at 98, 261 S.E.2d at 117.

"[C]onviction of drug trafficking requires proof that the defendant (1) knowingly (2) possessed or transported a given controlled substance, and also that (3) the amount transported was greater than the statutory threshold amount." *State v. Shelman*, 159 N.C. App. 300, 307, 584 S.E.2d 88, 94, *disc. review denied*, 357 N.C. 581, 589 S.E.2d 363 (2003). To prove that a defendant possessed contraband materials, the State must prove beyond a reasonable doubt that the defendant had either actual or constructive possession of the materials. *State v. Perry*, 316 N.C. 87, 96, 340 S.E.2d 450, 456 (1986).

> A person has actual possession of a substance if it is on his person, he is aware of its presence, and either by himself or together with others he has the power and intent to control its disposition or use. Constructive possession, on the other hand, exists when the defendant, while not having actual possession, . . . has the intent and capability to maintain control and dominion over the narcotics. When the defendant does not have exclusive possession of the location where the drugs were found, the State must make a showing of other incriminating circumstances in order to establish constructive possession.

*State v. Boyd*, 177 N.C. App. 165, 175, 628 S.E.2d 796, 805 (2006) (citations and quotations omitted).

In the present case, the State relied on the doctrine of constructive possession. Defendant argues that he did not have constructive possession of the methamphetamine or the precursor chemicals. Defendant contends that he was only briefly in the shed, and that he never had exclusive possession of the shed. Furthermore, Defendant did not flee when the owner of the shed approached. Defendant did not own the shed which was located only fifty feet from the house of the State's primary suspect, Ms. Brinkley. Lastly, Defendant points out that local law enforcement officers did not collect any fingerprints from the crime scene.

In the present case, the parties agree that Defendant did not have exclusive possession of the premises. Without exclusive possession, the State had to prove the presence of other incriminating circumstances for constructive possession to be inferred. *See Boyd*, 177 N.C. App. at 175, 628 S.E.2d at 805. We hold that the State sufficiently proved other incriminating circumstances to establish that Defendant had constructive possession of methamphetamine and precursor chemicals.

The State presented evidence that Mr. Boyd found Defendant alone in the shed where the methamphetamine and precursor chemicals used in the manufacture of methamphetamine were located, with the door locked from the inside. Defendant left the premises only after being confronted by Mr. Boyd, the owner of the shed. Mr. Boyd testified that he recognized Defendant as a frequent visitor of a former tenant. The State's evidence also showed that SBI agents found the following materials in the shed: two bottles containing a total of 2,090 grams of liquid later determined to contain methamphetamine, along with iodine, pseudoephedrine, red phosphorus, and other materials commonly used in the manufacturing of methamphetamine. Investigators also found a jar of unknown liquid sitting on a heater that was on and warm to the touch. Moreover, investigators found in the shed an envelope addressed to Defendant that contained a 2003 tax document of Defendant's from the Employment Security Commission. Viewed in the light most favorable to the State, this is sufficient evidence of other incriminating circumstances necessary for inferring that Defendant had constructive possession of the methamphetamine and precursor chemicals.

Defendant cites *State v. Alcolatse*, 158 N.C. App. 485, 581 S.E.2d 807 (2003), *State v. McLaurin*, 320 N.C. 143, 357 S.E.2d 636 (1987), and *State v. Chavis*, 270 N.C. 306, 154 S.E.2d 340 (1967), in support of his argument that the State did not prove he had constructive possession of the materials. However, these cases are distinguishable.

In *Acolatse*, this Court reversed the defendant's convictions for possession with intent to sell and deliver cocaine and trafficking in cocaine by possession because the State failed to prove sufficient incriminating circumstances so as to create an inference of constructive possession. *Acolatse*, 158 N.C. App. at 490-91, 581 S.E.2d at 811. In *Acolatse*, the defendant, who had been driving with a revoked license, fled on foot from police officers when they approached. *Id.* at 486, 581 S.E.2d at 808-09. During the chase, a detective saw the defendant make a throwing motion towards some nearby bushes. *Id.* at 487, 581 S.E.2d at 809. The detectives found five bags of cocaine on the roof of a nearby detached garage, which was not located near the bushes. *Id.* The defendant did not reside in, or own, the property where the cocaine was found. *Id.* The defendant had $830.00 on his person. *Id.* This Court held the above evidence to be insufficient to establish the other incriminating circumstances necessary to establish an inference of constructive possession. *Id.* at 490, 581 S.E.2d at 811.

STATE v. LOFTIS

[185 N.C. App. 190 (2007)]

*Acolatse* differs from the instant case. None of the evidence in *Acolatse* directly connected the defendant to the specific location where the cocaine was found. In contrast, in the present case, Defendant was found inside the locked shed with the methamphetamine and precursor chemicals. Furthermore, a jar of unknown liquid was on a heater that was still warm to the touch. Finally, a letter was found in the shed that was addressed to Defendant and that contained confidential tax information. This evidence showed other incriminating circumstances necessary to infer constructive possession.

In *McLaurin*, the defendant was convicted of possession of drug paraphernalia that police found during a search of the defendant's house. *McLaurin*, 320 N.C. at 144-45, 357 S.E.2d at 637. Our Supreme Court held that the evidence indicating the defendant's control over the premises was "patently nonexclusive[.]" *Id.* at 146, 357 S.E.2d at 638. The Court based this holding on the fact that two other parties had been seen entering and leaving the premises that day. *Id.* Also, children's clothing and adult male clothing had been found in the closets and bureaus, indicating the defendant did not reside there alone. *Id.* The Court held this evidence to be insufficient to establish the other incriminating circumstances necessary to prove constructive possession. *Id.* at 147, 357 S.E.2d at 638-39.

*McLaurin* differs from the present case in that the State's evidence indicated that Defendant was the only person seen in the shed, and no one else entered the shed after the arrival of police. Unlike in *McLaurin*, Defendant was the only person seen entering and leaving the shed that evening, and there was no evidence that anyone else's belongings were found inside the shed.

In *Chavis*, police saw the defendant wearing a hat. *Chavis*, 270 N.C. at 307, 154 S.E.2d at 341. The defendant and his companion were later stopped by police, and the defendant was no longer wearing a hat, nor were any drugs found on the defendant. *Id.* at 308, 154 S.E.2d at 342. Police later returned to the area where the defendant had been stopped, and they found the hat the defendant had originally been seen wearing. *Id.* Eleven envelopes were found inside the hat containing a total of 27.01 grams of marijuana. *Id.* Our Supreme Court held that although "the evidence raise[d] a strong suspicion as to [the] defendant's guilt," it "[fell] short of being sufficient to support a finding that the marijuana found by the officers in and on a hat in the high grass was in the possession of [the] defendant when he was first observed and followed by the officers." *Id.* at 311, 154 S.E.2d at 344.

*Chavis* is distinguishable. In *Chavis*, another person was in close enough proximity to the defendant that the evidence did not rule out the possibility that the marijuana belonged to a third party. *Id.* at 310, 154 S.E.2d at 344. In the present case, there was no other person in the shed with Defendant. Defendant was found alone in the shed with the methamphetamine and precursor chemicals. Thus, *Chavis* is inapplicable.

For the above reasons, we hold that the State produced sufficient evidence of other incriminating circumstances to establish Defendant's constructive possession of the methamphetamine and precursor chemicals. We hold the trial court did not err by denying Defendant's motions to dismiss.

III.

[3] Defendant next argues the trial court erred by excluding evidence of law enforcement's suspicions of the involvement of another person, and evidence of Defendant's address at the time of his arrest. We disagree.

Defendant argues that excluding evidence of Ms. Brinkley's prior use of methamphetamine and her prior violation of probation violated Defendant's constitutional right to present a defense. However, N.C.R. App. P. 10(b)(1) provides that "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." "This Court will not consider arguments based upon matters not presented to or adjudicated by the trial tribunal." *State v. Eason*, 328 N.C. 409, 420, 402 S.E.2d 809, 814 (1991). "It is well settled that an error, even one of constitutional magnitude, that [a] defendant does not bring to the trial court's attention is waived and will not be considered on appeal." *State v. Wiley*, 355 N.C. 592, 615, 565 S.E.2d 22, 39 (2002), *cert. denied, Wiley v. North Carolina*, 537 U.S. 1117, 154 L. Ed. 2d 795 (2003).

At trial, Defendant did not argue that exclusion of this evidence violated his constitutional right to present a defense. Thus, this constitutional argument was not properly preserved at trial and is not properly before us.

Nevertheless, even had this assignment of error been properly preserved, the trial court did not err by excluding the evidence. "Few

rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302, 35 L. Ed. 2d 297, 312 (1973). "Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense." *Washington v. Texas*, 388 U.S. 14, 19, 18 L. Ed. 2d 1019, 1023 (1967).

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2005). "Although a trial court's rulings on relevancy are not discretionary and we do not review them for an abuse of discretion, we give them great deference on appeal." *State v. Grant*, 178 N.C. App. 565, 573, 632 S.E.2d 258, 265 (2006), *disc. review denied*, 361 N.C. 223, 642 S.E.2d 712 (2007).

" 'The admissibility of evidence of the guilt of one other than the defendant is governed now by the general principle of relevancy [stated in Rule 401.]' " *State v. Israel*, 353 N.C. 211, 217, 539 S.E.2d 633, 637 (2000) (quoting *State v. Cotton*, 318 N.C. 663, 667, 351 S.E.2d 277, 280 (1987)).

> "Evidence that another committed the crime for which the defendant is charged generally is relevant and admissible as long as it does more than create an inference or conjecture in this regard. It must point directly to the guilt of the other party. Under Rule 401 such evidence must tend *both* to implicate another *and* be inconsistent with the guilt of the defendant."

*Id.* (quoting *Cotton*, 318 N.C. at 667, 351 S.E.2d at 279-80).

At trial, Defendant attempted to introduce evidence of Ms. Brinkley's prior use of methamphetamine and of a probation violation, but the trial court excluded this evidence. Defendant cites *Holmes v. South Carolina*, 547 U.S. 319, 164 L. Ed. 2d 503 (2006), in support of his argument that it was error to exclude the aforementioned evidence. However, *Holmes* is distinguishable.

In *Holmes*, the state trial and appellate courts had excluded evidence offered by the defendant indicating a third person committed the crimes. *Id.* at 323-24, 164 L. Ed. 2d at 508. The state courts had excluded the evidence based on a rule that " 'where there is strong evidence of [a defendant's] guilt, especially where there is strong

forensic evidence, the proffered evidence about a third party's alleged guilt [did] not raise a reasonable inference as to the [defendant's] own innocence.' " *Id.* at 324, 164 L. Ed. 2d at 508 (citation omitted). The United States Supreme Court reversed this conviction, holding that the state court rule was " 'arbitrary' in the sense that it [did] not rationally serve the end that the *Gregory* rule and other similar third-party guilt rules were designed to further." *Id.* at 331, 164 L. Ed. 2d at 513.

Unlike in *Holmes*, evidence of Ms. Brinkley's past involvement with methamphetamine was not inconsistent with Defendant's guilt and did not exculpate him in any way. Evidence of Ms. Brinkley's involvement did not disprove any of the evidence against Defendant. The weight of the evidence indicating that Defendant had constructive possession of the shed and its contents is in no way diminished by evidence of Ms. Brinkley's own involvement with methamphetamine.

The North Carolina rule is not "arbitrary" as South Carolina's rule in *Holmes* was held to be. As the Court acknowledged in *Holmes*, proferred evidence " 'may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial.' " *Holmes*, 547 U.S. at 327, 164 L. Ed. 2d at 510-11 (quoting 40A Am. Jur. 2d, Homicide § 286, pp. 136-38 (1999)).

Furthermore, in the present case, the evidence of Ms. Brinkley's probation violation had not yet been adjudicated at the time of Defendant's trial. As such, it was merely an allegation of her involvement with methamphetamine, and was not conclusive. Moreover, as we have already determined, the excluded evidence relating to Ms. Brinkley's prior involvement with methamphetamine was not inconsistent with Defendant's guilt. Therefore, we hold the trial court did not err by excluding this evidence.

Defendant also argues that it was error for the trial court to exclude evidence that he was arrested at 11 Locust Cove Road, a different address than appeared on the envelope introduced by the State. The trial court noted that evidence that the address on the envelope differed from Defendant's address at the time of his arrest only proved Defendant had moved between January 2004 and April 2004. We hold the trial court did not err by excluding this evidence as irrelevant.

IV.

**[4]** Defendant also argues that to the extent we determine the trial court did not commit plain error by allowing testimony regarding Defendant's post-arrest silence, "this matter should be remanded to the trial court for inquiry into the effectiveness of [trial] counsel's representation."

" '[Ineffective assistance of counsel] claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing.' " *State v. Al-Bayyinah*, 359 N.C. 741, 752, 616 S.E.2d 500, 509 (2005) (quoting *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001), *cert. denied*, *Fair v. North Carolina*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002) (citations omitted)). In the present case, we do not have sufficient information regarding trial counsel's strategy, and we therefore dismiss this issue without prejudice to Defendant's right to file a motion for appropriate relief. *See Al-Bayyinah*, 359 N.C. at 753, 616 S.E.2d at 509-10 (holding that "[t]rial counsel's strategy and the reasons therefor are not readily apparent from the record, and more information must be developed to determine [the issue]. Therefore, this issue is dismissed without prejudice to [the] defendant's right to raise this claim in a post-conviction motion for appropriate relief.").

No error.

Judges ELMORE and STEPHENS concur.