STATE OF NORTH CAROLINA
v.
ANTHONY SHAUN DEBERRY
No. COA09-420.
Court of Appeals of North Carolina.
Filed: February 16, 2010.
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Barry H. Bloch for State.
Betsy J. Wolfenden, for Defendant-Appellant.
ERVIN, Judge.
Defendant Anthony Shaun Deberry appeals from a judgment entered by the trial court sentencing him to a minimum term of 18 months and a maximum term of 22 months imprisonment in the custody of the North Carolina Department of Correction based upon a jury verdict convicting Defendant of possession of an immediate precursor chemical. After careful consideration of Defendant's challenges to his convictions in light of the record and the applicable law, we conclude that Defendant received a fair trial, free from prejudicial error.

I. Factual Background

A. Substantive Facts
On 25 February 2008, an agent of the Richmond County Department of Social Services telephoned Detective W. N. Smith of the Richmond County Sheriff's Department with information about a potential methamphetamine lab. According to the caller, individuals were "cooking meth in [an] outbuilding at [a] residence" located on Gin Mill Road in Hamlet despite the fact that "there were kids running in and out of the building at the same time." As a result, Detectives Smith and Bowman drove to the residence in question in order to investigate the caller's report.
After arriving at the residence at approximately 1:00 p.m., the detectives observed Crystal Deberry and two small children standing outside a residence. Ms. Deberry told the detectives that her husband had gone to an auto parts store and asked the officers to wait until he returned before engaging in further investigative activities. Ms. Deberry attempted to reach her husband on his cell phone but did not receive an answer.
Approximately five or six minutes later, two men pulled up into the yard in a green Jeep Cherokee. The driver of the Cherokee introduced himself as Defendant Shaun Deberry. After informing Defendant that he was there in order to investigate a report that a methamphetamine lab was operating on the premises, Detective Smith asked for permission to search an outbuilding which was located approximately twenty to thirty feet from the residence located on the property. Defendant consented to the search. At the time of his conversation with Detective Smith, Defendant was "very cooperative" and did not appear nervous.
Since the front of the outbuilding appeared to be locked, Detective Smith asked Defendant for a key. Defendant retrieved the key from the Jeep after briefly searching for it inside the residence. After he located the key, the detectives and Defendant began walking toward the outbuilding. As they did so, one of the children ran ahead and entered the structure through an unlocked entrance that Detective Smith had not previously noticed. After the child entered the structure, an adult male, who identified himself as Brian Lewis, emerged from the building and informed the detectives that he had been sleeping there.[1] At that point, the detectives and Defendant entered the outbuilding, which Detective Smith described as being about eleven feet by ten feet.
Upon entering the outbuilding, Detective Smith discovered, among other things, a table "[d]irectly in front of the door when you walked in." In addition, Detective Smith observed a toolbox "to the left-hand side;" plastic bottles; mason jars, some of which contained clear liquid and one of which contained orange liquid and a coffee filter; a Sunkist drink bottle; two boxes of salt; an aerosol can; a grinder; a pair of scissors; electrical tape; a pair of pliers; a plastic bottle containing clear liquid; a grill with a television monitor sitting on top of it; and a water cooler. In addition, Detective Smith observed a video monitor through which people inside the outbuilding could observe the area outside the structure and a seat that had been removed from a car that "looked like somebody may have been sleeping on it," along with a blanket and heater. Detective Smith also discovered a black "bookbag" which contained "more clear plastic bottles with clear tubing down inside of it, taped around." At that point, the detectives "decided that [they] were inside a meth lab, and that [they] needed to exit at that time." After handcuffing Defendant, Lewis, and the other individual who had arrived in the Jeep, the detectives contacted their supervisor and other emergency personnel for the purposes of procuring a search warrant and other assistance.
After agents of the State Bureau of Investigation arrived, they searched Defendant's residence and the outbuilding pursuant to a search warrant obtained by Lieutenant Jebo Starling of the Richmond County Sheriff's Department. A piece of foil with burn marks found on the top of a cabinet was the only item of interest seized inside the residence. According to Detective Smith, this item was believed to have evidentiary value because tinfoil can be used to cook methamphetamine.
Former Special Agent Todd Hummel of the State Bureau of Investigation, a forensic chemist, examined the outbuilding after arriving at the scene on 25 February 2008. During the course of his search of the outbuilding, former Special Agent Hummel observed a cooking stove, mason jars, two containers of salt, camp fuel, a digital scale, an orange funnel, drain opener containing sodium hydroxide, rubbing alcohol, coffee filters, a blender bottom, plastic tubing, and toluene. According to former Special Agent Hummel, these items can be used in making methamphetamine. Remnants of battery packaging, a lithium battery, plastic bottles containing a white crystalline material, and a bottle of sulfuric acid were found in a "burn pile" outside the building. Former Special Agent Hummel testified that the plastic bottles could have been "HCL generators," which are used in the salting step at the conclusion of the methamphetamine production process.
According to former Special Agent Hummel, a coffee filter found in a tool box drawer in the outbuilding tested positive for residual methamphetamine and pseudoephedrine; a blender bottom with half of a soda bottle on top of it taken from the outbuilding tested positive for "precursor methamphetamine"; and one of five coffee filters found in a glass jar in the outbuilding contained methamphetamine. Former Special Agent Hummel believed that the lab in question was a smaller scale operation and that Defendant appeared to be using the ammonia method of manufacturing methamphetamine. Former Special Agent Hummel based this conclusion on the presence of evidence of the "three main components" used in manufacturing methamphetamine using this process, including "a receipt for pseudoephedrine," "lithium batteries" and "one of the two components to make the condensed ammonia[,] . . . drain opener" and that, "out of the three things that you need to make methamphetamine with this ammonia method, I found two and a half of them."
According to former Special Agent Hummel, the precursor chemicals that were found on the premises included toluene, sulfuric acid, lithium batteries, and pseudoephedrine. In addition, former Special Agent Hummel testified that there were two cans of brake parts cleaner that might have contained another precursor chemical, trichloroethylene. Former Special Agent Hummel did not find any finished methamphetamine on the premises.
Former Special Agent Hummel discovered a CVS pharmacy receipt for Sudafed in a trash can located outside the outbuilding. Sam Lewis, a CVS pharmacist, testified that the CVS receipt reflected Defendant's purchase of 1.44 grams of pseudoephedrine, which the pharmacist believed to have taken the form of 48 30-milligram tablets. At the time that he made this purchase, Defendant was required to show his driver's license, which listed his address as that of the Gin Mill Road residence. According to former Special Agent Hummel, the 1.44 grams of pseudoephedrine that Defendant purchased could be used to produce 1.32 grams of methamphetamine, which would be sufficient to produce 26 doses.

B. Procedural Background
On 25 February 2008, a Warrant for Arrest was issued charging Defendant with intentionally keeping and maintaining a building used for keeping and selling methamphetamine and possession of drug paraphernalia. On 26 February 2008, a Warrant for Arrest was issued charging Defendant with possessing immediate precursor chemicals with the intent to manufacture methamphetamine. On 21 April 2008, the Richmond County grand jury returned bills of indictment charging Defendant with intentionally keeping and maintaining a building used for keeping and selling methamphetamine, possession of drug paraphernalia, and possession of immediate precursor chemicals knowing or having reasonable cause to know that those chemicals would be used to manufacture methamphetamine.
The cases against Defendant came on for trial before the trial court and a jury at the 3 November 2008 criminal session of the Richmond County Superior Court. At the close of the State's evidence, the trial court granted Defendant's motion to dismiss the possession of drug paraphernalia charge and denied his motion to dismiss the remaining charges. After deciding not to present evidence on his own behalf, Defendant unsuccessfully renewed his dismissal motions. Following the arguments of counsel and the trial court's instructions to the jury, the jury convicted Defendant of intentionally keeping and maintaining a building for keeping a controlled substance and possession of immediate precursor chemicals. After the return of the jury's verdict, the trial court arrested judgment in the case in which Defendant had been convicted of intentionally keeping and maintaining a building used for keeping controlled substances.
At the sentencing hearing, the trial court found that Defendant had one prior record point and should be sentenced as a Level II offender. Based upon that determination, the trial court concluded that Defendant should be sentenced within the presumptive range and ordered that Defendant be imprisoned for a minimum term of 18 months and a maximum term of 22 months in the custody of the North Carolina Department of Correction. Defendant noted an appeal to this Court from the trial court's judgment.[2]

II. Legal Analysis

A. Standard of Review
The only two issues that Defendant has brought forward for our consideration on appeal involve the sufficiency of the evidence to support his convictions for intentionally keeping and maintaining a building used for keeping controlled substances and possession of immediate precursor chemicals. When reviewing a motion to dismiss for evidentiary insufficiency, the court must consider "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein and (2) of defendant's being the perpetrator of such offense." State v. Spencer, 192 N.C. App. 143, 147, 664 S.E.2d 601, 604 (2008), disc. review denied, 363 N.C. 380, 680 S.E.2d 208 (2009)(citing State v. Powell, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). "Substantial evidence" is evidence that is "`relevant and adequate to convince a reasonable mind to accept a conclusion.'" State v. Euceda-Valle, 182 N.C. App. 268, 275, 641 S.E.2d 858, 864, disc. review and cert. denied, 361 N.C. 698, 652 S.E.2d 923 (2007) (quoting State v. Robinson, 355 N.C. 320, 336, 561 S.E.2d 245, 255, cert. denied, 537 U.S. 1006, 154 L. Ed. 2d 404 (2002)). The trial court "`must consider all of the evidence in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence.'" State v. Manning, 184 N.C. App. 130, 136-37, 646 S.E.2d 573, 577, disc. review denied and dismissed, 367 N.C. 90, 657 S.E.2d 23, 24 (2007)(quoting State v. Wood, 174 N.C. App. 790, 795, 622 S.E.2d 120, 123 (2005)). "However, `[i]f the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed.'" State v. Loftis, 185 N.C. App. 190, 196, 649 S.E.2d 1, 6 (2007), disc. review denied, 362 N.C. 241, 660 S.E.2d 494 (2008). "`[C]ontradictions and discrepancies are for the jury to resolve and do not warrant dismissal . . ..'" State v. Cowan, __ N.C. App. __, __, 669 S.E.2d 811, 815 (2008) (quoting State v. Estes, 186 N.C. App. 364, 368-70, 651 S.E.2d 598, 601-02 (2007), appeal dismissed and disc. review denied, 362 N.C. 365, 661 S.E.2d 883 (2008)). We review Defendant's challenges to his convictions in light of this well-established standard of review.

B. Maintaining a Building
First, Defendant contends that the trial court erred by failing to dismiss the charge of keeping and maintaining a building used for the purpose of keeping controlled substances. After carefully considering the evidentiary record in light of the applicable law, we do not find Defendant's argument persuasive.[3]
In order to sustain a conviction for violating N.C. Gen. Stat. § 90-108(a)(7), the State must prove that Defendant did "knowingly keep or maintain any . . . building. . . or any place whatever, which [was] resorted to by persons using controlled substances . .. for the purpose of using such substances, or which [was] used for the keeping or selling of the same . . .." In examining the sufficiency of the evidence to support a finding that a person "keeps or maintains" property in violation of N.C. Gen. Stat. § 901-08(a)(7), the court may consider certain factors, including "ownership of the property, occupancy of the property, repairs to the property, payment of utilities, payment of repairs, and payment of rent." State v. Baldwin, 161 N.C. App. 382, 393, 588 S.E.2d 497, 506 (2003) (citing State v. Frazier, 142 N.C. App. 361, 365, 542 S.E.2d 682, 686 (2001)). Since none of these factors have dispositive effect, the court must look to the totality of the circumstances in determining whether the evidence is sufficient to support Defendant's conviction. Id.
Defendant cites State v. Bowens, 140 N.C. App. 217, 535 S.E.2d 870 (2000), disc. review denied by 353 N.C. 383, 547 S.E.2d 417 (2001); State v. Kraus, 147 N.C. App. 766, 557 S.E.2d 144 (2001); and State v. Harris, 157 N.C. App. 647, 580 S.E.2d 63 (2003) in support of his argument that the evidentiary record does not support a finding that he occupied, owned, or maintained the outbuilding located on the property at which he resided. In Bowens, we found the evidence insufficient to support the defendant's conviction for keeping and maintaining a dwelling used for keeping or selling controlled substances given the absence of evidence tending to show that the defendant did more than frequent the building in question. Id. at 223, 535 S.E.2d at 873. In reaching this conclusion, we noted that the fact that men's clothes had been discovered on the premises and that an arresting officer "believed" that the defendant lived there did not suffice to support the defendant's conviction given the absence of evidence tending to show that the clothes belonged to the defendant and the fact that the arresting officer did not know where the defendant lived. Id. In Kraus, we held that the fact that the defendant had access to a key to a motel room, had spent the previous night there, and was present when investigating officers discovered marijuana, marijuana seeds and stems, a box cutter, cigar wrappers, small plastic bags, pill bottles, and a small bag containing 85 grams of marijuana and a quantity of crack cocaine did not suffice to support the defendant's conviction since the record did not contain any evidence tending to show that the defendant had rented or otherwise borne the expense of or financed the upkeep of the room. Id. at 768-69, 557 S.E.2d at 146-47. Finally, in Harris, we held that the mere fact that personal property belonging to the defendant was found on the premises, standing alone, was not sufficient to support the denial of a dismissal motion given that none of the documents belonging to the defendant found on the premises identified it as the defendant's address. Harris, 157 N.C. App. at 652-53, 580 S.E.2d at 66-67. Based on these decisions, Defendant argues that "the State introduced no evidence that [Defendant] occupied the outbuilding, bore the expense of the outbuilding, maintained the outbuilding, was aware of what was going on in the outbuilding or was ever even in the outbuilding;" that, while Defendant "voluntarily produce[d] a key to enter the outbuilding, the key was never confirmed to open the outbuilding and [Defendant] could not immediately recall the key's location;" and that, for all of these reasons, the trial court should have dismissed the maintaining a building charge that had been asserted against Defendant.
After a careful review of the record evidence, we conclude that Defendant's reliance on Bowens, Kraus, and Harris is misplaced. All three of the decisions upon which Defendant relies hinge upon the absence of substantial evidence tending to show the existence of any significant nexus between the defendant and the building or room in question. In this case, however, the record contains evidence tending to show that Defendant lived in a residence located no more than twenty to thirty feet from the outbuilding. Furthermore, a receipt for Sudafed that Defendant had purchased approximately one month before his arrest was found in a trash can outside the outbuilding, which contained items that Detective Smith and former Special Agent Hummel indicated were useful in the manufacture of methamphetamine. Moreover, one of the children with Defendant's wife entered the outbuilding through an entrance that was not readily apparent to Detective Smith in such a manner as to indicate substantial familiarity with the structure in question. Finally, in response to a request made by Detective Smith, Defendant authorized a search of the outbuilding and searched for and produced what he claimed was a key to that structure.[4] When the record is viewed in the light most favorable to the State, there is more than sufficient evidence to support the submission of the issue of Defendant's guilt of keeping and maintaining a building used for keeping drugs to the jury. As a result, we conclude that the trial court correctly denied Defendant's dismissal motion.

C. Possession of Immediate Precursor Chemicals
Secondly, Defendant challenges the sufficiency of the evidence to prove his guilt of possession of immediate precursor chemicals. In essence, Defendant contends that the evidence, when taken in the light most favorable to the State, does not establish that he possessed the substances in question. After careful consideration of the evidentiary record, we disagree.
"To prove that a defendant possessed contraband materials, the State must prove beyond a reasonable doubt that the defendant had either actual or constructive possession of the materials." Loftis, 185 N.C. App. at 197, 649 S.E.2d at 6 (citing State v. Perry, 316 N.C. 87, 96, 340 S.E.2d 450, 456 (1986)).
A person has actual possession of a substance if it is on his person, he is aware of its presence, and either by himself or together with others he has the power and intent to control its disposition or use. Constructive possession, on the other hand, exists when the defendant, while not having actual possession,. . . has the intent and capability to maintain control and dominion over the narcotics. When the defendant does not have exclusive possession of the location where the drugs were found, the State must make a showing of other incriminating circumstances in order to establish constructive possession.
State v. Boyd, 177 N.C. App. 165, 175, 628 S.E.2d 796, 805 (2006) (citations and quotations omitted); see also State v. McLaurin, 320 N.C. 143, 147, 357 S.E.2d 636, 638-39 (1987) (holding that, "because defendant's control over the premises in which the paraphernalia was found was nonexclusive, and because there was no other evidence of incriminating circumstances linking her to those items, her control was insufficiently substantial to support a conclusion of her possession of the seized paraphernalia"). "Where sufficient incriminating circumstances exist, constructive possession of the contraband materials may be inferred even where possession of the premises is nonexclusive." Kraus, 147 N.C. App. at 770, 447 S.E.2d at 147. While evidence of "defendant's presence on the premises and close proximity to a controlled substance is a circumstance which may support an inference of constructive possession," mere knowledge that controlled substances are present in a particular structure without "substantial evidence that [the defendant] had the capability to maintain control and dominion over" the controlled substances is not. State v. Givens, 95 N.C. App. 72, 77-78, 381 S.E.2d 869, 872 (1989) (citing Brown, 310 N.C. at 569-70, 313 S.E.2d at 589 and State v. Harvey, 281 N.C. 1, 13 187 S.E.2d 706, 714 (1972)); see also State v. Finney, 290 N.C. 755, 760-61, 228 S.E.2d 433, 436 (1976) (holding that, since "[a]ll the State has shown is that defendant Finney was in the apartment some 44 days before the search and that his name appeared on the lease at the time of the search," "[t]he trial judge should have allowed the motion for judgment as of nonsuit at the close of all the evidence").
In challenging the sufficiency of the State's evidence, Defendant argues that Lewis' presence in the outbuilding at the time that investigating officers approached the structure establishes that Defendant's possession of the outbuilding was nonexclusive and contends that the record does not contain any additional evidence tending to show that Defendant exerted dominion and control over the immediate precursor chemicals he was charged with possessing. Defendant's argument overlooks a number of facts tending to support an inference that he did, in fact, have such dominion and control over both the outbuilding and the chemicals and other items found in and around it. For example, as we noted above, the evidence that the outbuilding was located twenty to thirty feet from Defendant's residence, that Defendant asserted the right to consent to a search of the outbuilding, that Defendant produced a key in response to the request by investigating officers for access to the building, and that one of the children with Defendant's wife readily entered a previously undetected entrance to the outbuilding supports an inference that Defendant exercised dominion and control over the outbuilding itself. Furthermore, the fact that a receipt for the purchase of pseudoephedrine bearing Defendant's name was discovered in close proximity to the outbuilding and the fact that pseudoephedrine, like many of the other items in the outbuilding, can be used in the manufacture of methamphetamine permits an inference that Defendant was aware of and constructively possessed the immediate precursor chemicals seized from the outbuilding and its immediate vicinity. As a result, when taken in the light most favorable to the State, the record contains sufficient evidence tending to show that Defendant possessed the immediate precursor chemicals that underlay his conviction for violating N.C. Gen. Stat. § 90-95(d1). As a result, the trial court correctly denied Defendant's motion to dismiss the charge of possession of immediate precursor chemicals.

III. Conclusion
Thus, for the reasons set forth above, we conclude that Defendant received a fair trial, free from prejudicial error. For that reason, Defendant's convictions should remain undisturbed.
NO ERROR.
Chief Judge MARTIN and Judge JACKSON concur.
Report per Rule 30(e)
NOTES
[1] Mr. Lewis died in custody of natural causes on 7 July 2008.
[2] According to the State's brief, Defendant was also charged with and acquitted of manufacturing methamphetamine.
[3] Although the trial court arrested judgment in connection with the case in which Defendant was convicted for keeping and maintaining a building used for keeping controlled substances, "[t]he legal effect of arresting judgment is to vacate the verdict and sentence," so that "[t]he State may proceed against the defendant[] if it so desires, upon new and sufficient bills of indictment." State v. Goforth, 65 N.C. App. 302, 306, 309 S.E.2d 488, 492 (1983) (citations omitted). "As the State could issue [a] new indictment[] against defendant upon the arrested judgment[], defendant could be placed in double jeopardy." State v. Whitaker, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___, 2009 N.C. App. LEXIS 2198 (2009). For that reason, we conclude that Defendant's challenge to the sufficiency of the evidence to support his conviction for keeping and maintaining a building for the keeping of controlled substances is not moot despite the fact that the trial court arrested judgment in that case.
[4] Although Defendant points out that the record does not contain any evidence that the key that Defendant produced would have actually unlocked the door to the outbuilding, that fact goes to the weight to be given to the State's evidence and not to its sufficiency to support a conviction.